IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Cr.A. No. 05-36-JJF |
| * | | |
| ROBERT COOKE, | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO SUPPRESS**

LAW OFFICE OF
EDWARD C. GILL, P.A.

/s/ _____
Edward C. Gill, Esquire
Attorney for Defendant
Bar No. 2112
16 N. Bedford Street
P. O. Box 824
Georgetown, DE  19947
(302) 854-5400
ed@de-law.com

DATED:

1

This is the Memorandum of Law on behalf of the Defendant's Motion to Suppress.

## ISSUE

Whether the totality of the circumstances, as set forth within the four corners of the search warrant affidavit, give rise to a fair probability and properly draw a nexus to conclude that the search of 2306 South State Street, Dover, Delaware, would uncover contraband or evidence of a crime, which would accordingly provide the magistrate with a substantial basis for concluding that probable cause existed to issue a search warrant for said address.

## THE WARRANT APPLICATION

It is alleged in the probable cause affidavit (which is attached hereto) that during the last two weeks of February 2005, Affiant Short was contacted by a cooperating individual ("CI"), who prior to this time did not have a history as an informant. The CI advised Affiant Short that he could purchase marijuana from Gwennette Bowman at her residence and agreed to work with the police on a controlled buy. It was during this controlled buy that Ms. Bowman agreed to set up a meeting at her residence with Robert Cooke.

On February 25, 2005, the initial meeting between Mr. Cooke and the CI occurred at Ms. Bowman's residence. At this meeting Mr. Cooke agreed to sell the CI a certain quantity of marijuana at a later date. The subsequent selling of this quantity occurred on March 2, 2005, in the parking lot of the BCP car dealership in Smyrna. During this second encounter, Mr. Cooke discussed purchasing marijuana from the CI in two weeks. This transaction occurred on March 16, 2005; also at the BCP car dealership. After this transaction, Mr. Cooke was arrested and a warrant was issued to search his home.

It is alleged that the defendant, Robert Cooke, resides at 2306 South State Street, Dover, Delaware. It is submitted that there is absolutely no information in the affidavit or anywhere else

indicating that drugs, paraphernalia or other criminal activity was, or ever had been, located at or near that address. More importantly, Mr. Cooke's residence is never mentioned as having illegal substances within it. Any and all transactions that occurred between Mr. Cooke and the CI specifically take place at the BCP car dealership in Smyrna. Moreover, the only occasions in which any amount of marijuana was in the defendant's possession was while Mr. Cooke was in his vehicle. With these facts known, a warrant to search Mr. Cooke's residence was executed. It is submitted that there existed no probable cause that there were any illegal activities occurring within Mr. Cooke's residence.

**LAW**

The Fourth Amendment to the United States Constitution states that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . .." U.S.C.A. Const. Amend. IV; *See also* Del. Const. Art. I, § 6 (requires that in order for a search warrant to be issued probable cause for its issuance must first be established). While an individual is protected against unreasonable searches and seizures, a person's home or person may be searched pursuant to a warrant, which must, on its face, set forth specific facts constituting probable cause to believe that a search will reveal evidence that a crime has been committed. *See Sexton v. State*, 397 A.2d 540 (Del. Supr. 1979); 11 Del. C. § 2306. It is well established that probable cause exists when, "given all the circumstances set forth *in the affidavit*, . . . there [exists] 'reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion' [that there] is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates,* 462 U.S. 213, 238 (1983). (emphasis added) (citation omitted).

When reviewing the legal sufficiency of the basis of issuance of a search warrant, the Court must determine whether the issuing judge had "a substantial basis" for concluding probable cause existed for the issuance of the search warrant. *Gates*, 462 U.S. at 235 (quoting *Jones v. United States*, 362 U.S. 257 (1960)). While a reviewing court should "accord 'great deference' to a magistrate's determination" that probable cause exists to issue a search warrant, *United States v. Leon*, 468 U.S. 897, 914 (1984) (citation omitted), the court must make an independent inquiry. *Elkins v. United States*, 364 U.S. 206, 223-24 (1960). Furthermore, the test that a court applies in deciding whether an affidavit offered in support of a search warrant provided the requisite probable cause to sustain the warrant is the "totality of the circumstances." *Gates*, 462 U.S. at 236. This particular test requires the issuing magistrate to use a "practical" and "common-sense" analysis to determine whether under "all the circumstances set forth in the affidavit," that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.*

I. **LACK OF PROBABLE CAUSE.**

The defendant's claim of a lack of probable cause is grounded upon the insufficiency of the affidavit on which the search warrant was issued. The law undisputedly states that the affidavit must "allege specific facts establishing a reasonable probability that the items sought are likely to be at the location designated." *United States v. Malin*, 908 F.2d 163, 166 (7th Cir. 1990). In reviewing the action of a magistrate in finding probable cause, the Court accordingly confines the inquiry to the four corners of the affidavit. *U.S. v. Evans*, 97 F. Supp. 95, 96 (D.C. Tenn. 1951). *See also Franks v. Delaware*, 438 U.S. 154, 160 (1978) (the Court must make its decision based "on the four corners" of the probable cause affidavit.)

In the case at hand, the affidavit is very detailed. It specifically describes activities of a suspected drug-trafficking operation. The affidavit precisely explains that the CI saw marijuana in the residences of Jason Esham and Kenneth and Gwennette Bowman. Additionally, the affidavit states in detail that the CI was sold certain quantities of marijuana while at the residences of Jason Esham and Kenneth and Gwennette Bowman. The probable cause document even links the operation to a few business establishments. However, with all the information that was obtained, no specific or even vague indications are stated in regard to Mr. Cooke's residence. There does not exist one sentence which links the transportation of illicit drugs to or selling of illicit drugs in or near Mr. Cooke's residence. There is absolutely no information in the affidavit or anywhere else indicating that drug paraphernalia was, or ever had been, located at or near Mr. Cooke's residence. **I**f the affiant had any reason to believe that illegal activities or illegal substances were within Mr. Cooke's residence proof must be in the probable cause affidavit. It is not enough for the Court or even the affiant to assume that illegal activities are being carried on at Mr. Cooke's residence without any reference to that effect.

The probable cause affidavit states that "based on your affiant's training, experience and participation in past drug investigations, your affiant knows: that it is common for drug traffickers to secrete contraband, proceeds of drug sales and records of transactions in secure locations within their residence . . .." Affiant Short also stated that "drug trafficker[s] will generally only transport that amount of drug needed to complete a specific transaction. The drug trafficker will maintain the balance of the supply at a secure location, usually at their residence." *Paragraph 39 of affidavit*. A similar statement was made by a detective in U.S. v. *McNeal, 82 F. Sup. 2d 945 (_____. Ind 2000)* In *McNeal*, the defendant sent his worker to sell cocaine to a

5

confidential informant on two occasions, but neither occasion occurred at the defendant's residence. The detective investigating the case stated:

> [b]ased upon my training and 8 and 1/2 years experience as a Narcotics detective it is quite common for records and proceeds to be kept at one location while the actual narcotics are being kept at a different location in an attempt to conceal the illegal activity as well as keeping the proceeds and records separate from the narcotics in case of a police investigation. Based upon the above information, I am requesting a search warrant be issued for the [defendant's] residence. *McNeal*, 82 F. Supp. 2d at 949.

The Court held that a detective's expert opinion that records and proceeds of drug transactions were commonly kept at a different location than drugs did not support the conclusion that records and proceeds of the defendant's suspected drug trafficking activities would be at premises believed to be his residence, as opposed to some other location, and thus, did not support a finding of probable cause justifying the issuance of a search warrant for the defendant's residence, particularly when the search warrant affidavit made no showing of the defendant's presence at said residence, or that of his alleged operatives, coinciding with the suspected activities. *Id.* at 955.

This Court should hold just as the *McNeal* Court did because Affiant Short's opinion is nothing more than a statement of suspicion without supporting facts to justify such suspicion and is thus insufficient to justify a finding that probable cause existed to search Mr. Cooke's residence. This opinion ". . . does not suggest that a drug dealer is more likely to keep drug related information at his/her residence than at some other location." *McNeal*, 82 F. Supp. 2d at 955. Although case law states that "when interpreting seemingly innocent conduct, the court issuing the warrant is entitled to rely on the training and experience of police officers," *U.S. v. Gil*, 58 F.3d 1414, 1418 (9th Cir. 1995), it has also been held that there is no probable cause for the search of a residence when there is no connection between illegal activities and the defendant's residence other than the agent's expert opinion that criminals often keep evidence of

6

their illegal activities in their residences. *United States v. Gomez,* 652 F. Supp. 461 (E.D.N.Y.1987). *See also U.S. v. Rosario*, 918 F. Supp. 524 (D.R.I. 1996) (holding that the opinion of a DEA special agent based upon her knowledge of behavior and practices of narcotics deals could not, by itself, furnish the requisite nexus between criminal activity and the place to be searched to establish probable cause to issue a search warrant); *see generally United States v. Rios*, 881 F. Supp. 772 (D.Conn. 1995). Thus,

> [w]hile the issuing magistrate is certainly entitled to consider and credit this specialized knowledge . . .," "where as here, there is nothing to connect the illegal activities with the arrested person's [residence], to issue a warrant based solely on the agent's expert opinion would be to license virtually automatic searches of residences of persons arrested for narcotics offenses. This would effectively eviscerate the fourth amendment's requirement that there be probable cause to believe 'that contraband or evidence of a crime will be found *in a particular place.*'" *Gomez*, 652 F. Supp. at 463 (citing *Gates*, 462 U.S. at 238 (emphasis added)).

The *McNeal* case sheds light on the issues at hand on several levels. However, the most important link is that *McNeal states it is not enough* that the only connection between the defendant's criminal activity and his residence "is the natural suspicion that criminals may maintain evidence of their crimes anywhere they spend time . . .." *Pope*, 330 F. Supp. 2d at 956-57. The Government would have the Court conclude that because the defendant utilized his residence combined with the affiant's experience that people who traffic drugs tend to keep them in their residences, that there was a sufficient nexus between the defendant's residence and the criminal activity for the issuance of a search warrant. However, as previously stated, " . . . an officer's training and experience alone are no substitute for the required evidentiary nexus between criminal activity and the place to be searched." *Id*. Moreover, the mere fact that Mr. Cooke comes and goes from his residence does not establish the essential nexus that is needed to find probable cause. It must be said that

> . . . [T]he presence of [the defendant] (or an operative) at [2306 South State Street, Dover, DE] must relate in some way to the timing of drug activity. To say that it is reasonable to infer that a person is present at his or her residence from time-to-time says nothing about whether that presence is likely to have occurred within a time frame close enough to the drug activity to make it fairly probable that drug-related evidence could be found there. At bottom, a bald conclusion that the residence is [the defendant's] adds nothing to the totality of the circumstances. *McNeal*, 82 F. Supp. 2d at 956.

A magistrate's decision to issue a search warrant should be upheld so long as the magistrate had a "substantial basis for ... conclud[ing] that probable cause existed." *Gates*, 462 U.S. at 235. *See also United States v. Spry*, 190 F.3d 829, 835 (7th Cir. 1999). However, this required "substantial basis" is lacking from the case at hand, just as it was in *McNeal.* Even with Affiant Short's expert opinion, there is nothing to link the defendant's residence to evidence of illegal substances in that residence. In fact " . . . *all* evidence points to the conclusion that the defendant was engaged in a [criminal offense in a car dealership parking lot], which makes it unreasonable to presume that evidence would also be found at any or all other locations connected to or even owned by the defendant." *Pope*, 330 F. Supp. 2d at 956. "It cannot follow . . . simply from the existence of probable cause to believe a suspect guilty, that there is also probable cause to search his residence." *Gomez*, 652 F. Supp. at 462 (quoting *United States v. Valenzuela*, 596 F.2d 824, 828 (9th Cir. 1979)).

To further the point, it should be noted that Mr. Cooke's residence was only known to Affiant Short because Short "performed an inquiry into Kent County Property Tax information [and] [t]he inquiry revealed that Robert Cooke owns a residence at 2306 South State Street, Dover, Delaware." *Paragraph 25 of affidavit*. The only information stated in the affidavit concerning Mr. Cooke's residence is that it "is a single-story red brick residence. There is a stockade fence around the rear of the residence and an outbuilding in the rear of the residence. The residence sits on the west side of South State Street and the number 2306 is on the end of the

8

driveway." *Paragraph 34 of affidavit*. The *McNeal* Court, which dealt with a similar basic and general description of a defendant's residence stated that "[t]he generic description of the house in the affidavit ('a one story single family dwelling that has a brown exterior. Said residence consists of a living room, dining room area, kitchen, bedroom(s) and bathroom(s)') suggests that someone, perhaps even [the detective] viewed the exterior of the residence but that no one associated with the affidavit had seen the interior." *McNeal*, 82 F. Supp. 2d at 952. Thus, absent some factual underpinning in the affidavit concerning Mr. Cooke's residence, there was no reasonable inference that the Court could have made to justify a finding of probable cause to search his residence.

   Moreover, it seems as though the judge's granting of the search warrant was based on " . . . . a construction of [the] affidavit [that] could only be done if the judge assume[d] the existence of unsupplied, but necessary facts." *McNeal*, 82 F. Supp. 2d at 953. Except for the averments by Affiant Short, the affidavit is devoid of any factual basis which would indicate that contraband or evidence of alleged criminal behavior would be found at Mr. Cooke's residence. First, there is no evidence that any drug deals took place in the vicinity of the defendant's residence. Second, the affidavit contains no indication that Mr. Cooke was ever observed by the CI, any detectives or anyone, at, coming from or going to his residence either just before or after a drug deal or, for that matter, at any time. Third, there is not even a suggestion in the affidavit that the defendant or the CI bought or sold illegal drugs at his residence. Additionally, several phone calls were made, but the affidavit does not connect any of the phone numbers with the residence searched. Furthermore, there is no recitation that illicit drugs were located on defendant's land, or that any were located near his house, or that he was seen at his home, or that he was known recently to have taken made transactions to or from his residence, or that he had been seen taking illicit

9

drugs into his home, or that purchasers had been seen going into his home and coming out with purchases of illicit drugs.

This lack of information clearly establishes that there was no substantial basis to issue a warrant for the search of Mr. Cooke's residence and thus, the finding of probable cause must be overruled as clear error. The supporting affidavit, "read as a whole in a realistic and common sense manner" did not present the judge with facts and circumstances demonstrating a fair probability that contraband or evidence of drug crimes would be found at the defendant's residence. *McNeal*, 82 F. Supp. 2d at 950-51. In the case at hand, neither contact is described as having taken place at the defendant's residence, "either in person or by telephone or beeper or any other device connected in any way with the residence." *Id*. at 952. There is simply nothing in the affidavit which would have assured the judge that any drug-related evidence would be found at Mr. Cooke's residence and because of this fact there was no probable cause for the issuance of a search warrant.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that the totality of the circumstances, as summarized within the four corners of the affidavit, did not give rise to a fair probability that the search of 2306 South State Street, Dover, Delaware, would uncover contraband or evidence of a crime. Accordingly, the affidavit did not provide the magistrate with a substantial basis for concluding that probable cause existed to search Mr. Cooke's residence.

Respectfully submitted,


/s/Edward C. Gill

ECG/jm

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | * |
| Plaintiff, | * |
| v. | *   Cr.A. No. 05-36-1 |
| ROBERT COOKE, | * |
| Defendant. | * |

### **ORDER**

**HAVING CONSIDERED** the Motion to Suppress of Defendant, Robert Cooke, and any responses thereto;

**IT IS HEREBY ORDERED** that Defendant's motion to suppress should be, and hereby is, **GRANTED**.

_____
JUDGE JOSEPH J. FARNAN, JR.

CERTIFICATE OF SERVICE

     I, Judy Maddox, Secretary to Edward C. Gill, Esquire, hereby certify that on the 12th day of September 2005, I caused to be electronically filed a Memorandum of Law in Suppport of Defendant's Motion to Suppress with the Clerk of Court.  I further certify that a copy of the foregoing was mailed via U.S. Postal Service to counsel of record as follows:

To:    April M. Byrd, Esquire                        Thomas A. Foley, Esquire
        Assistant U.S. Attorney                       1326 King Street
        Nemours Building                            Wilmington, DE 19801
        1007 Orange Street, Suite 700
        P.O. Box 2046
        Wilmington, DE 19899-2046

        James E. Liguori, Esquire
        46 The Green
        Dover, DE 19901

by United States Mail, with postage prepaid.

                                                                                  /s/
                                                               Judy Maddox