pertaining to The Dragon's Lair. David Smith advised that the Dragon's Lair is a partnership between Kenneth Bowman and Jennifer Layfield. Kenneth Bowman is 51 % owner and Jennifer Layfield is a 49% owner in the business. The business is located at 106 Midway Village, Rehoboth Beach, Delaware.

33. On March 9, 2005, Affiant Short instructed CI2 to call Robert Cooke to see if he still wished to purchase ten pounds of marijuana from CI2. CI2 placed the call and Robert Cooke advised that he would be able to purchase the marijuana the following week.

34. 2306 South State Street, Dover, Delaware is a single-story red brick residence. There is a stockade fence around the rear of the residence and an outbuilding in the rear of the residence. The residence sits on the west side of South State Street and the number 2306 is on the end of the driveway.

35. 3880 Paradise Alley Road, Harrington, Delaware is a two-story residence cream with cream colored siding and a dark colored roof and shutters. There is a detached three-car garage on the end of the driveway and an outbuilding in the rear yard. The residence sits on the south side of Paradise Alley Road and is approximately a mile north of Carpenter Bridge Road.

36. 65 Palace Road, Camelot Meadows Mobile Home Park. The residence is a light grey singlewide mobile home with a screened in porch. The residence sits on the west side of Palace Road in Camelot Meadows Mobile Home Park.

37. Teragwens Leather Toys and Lace and Ken's Underground Tattoo are stores in a strip mall. The names of the business are on a sign over the front door of the business. The strip mall address is 1044 South DuPont Highway, Dover, Delaware 19901. Since visual inspection shows that Ken's Underground Tattoo does not appear to sell drug paraphernalia, the search warrant is limited to Teragwens Leather Toys and Lace.

38. The Dragon's Lair is at 106 Midway Village, Rehoboth Beach, Delaware. The business has a sign with Dragon's Lair on the roof and is a red brick building.

39. Based upon your affiant's training, experience and participation in past drug investigations, your affiant knows:
    A. That drug traffickers very often place their assets in names other than their own to avoid detection of these assets by government agencies and even though these assets are in the names of others, the drug trafficker actually owns and continues to use these assets and exercise dominion and control over them.
    B. That drug traffickers must maintain large amounts of United States currency in order to maintain and finance their on going narcotic business;
    C. That drug traffickers maintain books, ledgers, records, receipts, notes, money

orders and other papers relating to the transportation, ordering, purchasing and distribution of drugs;

D. That it is common for drug traffickers to secrete contraband, proceeds of drug sales and records of transactions in secure locations within their residence and/or their business for their ready access and to conceal their existence from law enforcement officers.

E. That when drug traffickers amass large proceeds from the sale of drugs the traffickers attempt to legitimatize these profits. To do so, the drug traffickers often utilize domestic banks and their attendant services, securities, cashier's checks, money drafts, letters of credit, real estate and business fronts;

F. That drug traffickers commonly maintain addresses or telephone numbers in books of paper which reflect names, addresses and/or phone numbers of their associates in the drug trafficking organization;

G. That drug traffickers often take payment in the form of stolen items such as televisions, stereos, VCR's, guns and cameras and/or that they obtain these items legitimately with the profits of drug sales. These items, found in quantities of more than two, which is not common for a residence, are evidence of a drug dealer's profits;

H. Your affiant is aware that the courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, in particular, trafficking in controlled substances.

I. Your affiant can state that the drug trafficker will generally only transport that amount of drug needed to complete a specific transaction. The drug trafficker will maintain the balance of the supply at a secure location, usually at their residence.

40. Based upon the information contained herein, it is the belief of your affiant that probable cause does exist to believe that marijuana, paraphernalia, monies, drug records, and other evidence relating to the distribution of controlled drugs, as more fully described in the relevant Attachment Bs, can be found in the residences of Robert Cooke (2306 South State Street, Dover, Delaware), Gwennette Bowman (3880 Paradise Alley Road, Harrington, Delaware), and Jason Esham (65 Palace Road, Camelot Meadows Mobile Home Park, Rehoboth Beach, Delaware).

41. Federal law states that, "All conveyances, including ... vehicles ..., which are used ... to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of [controlled substances]" shall be subject to forfeiture. 21 U.S.C. § 881(a)(4). Based on the information contained in this affidavit, there is probable cause to believe that the following vehicles have been used to transport marijuana, and are therefore subject to forfeiture: -- a 2003 Jeep Cherokee, DE registration 27251 (see paragraphs 15 and 16); -- a 2000 Pontiac Grand Am, DE registration 441163 (see paragraph 17); and -- a 2004 Jeep Cherokee, DE registration PC305313 (see paragraphs 19 and 26).

42. Based upon my experience, as well as discussions with other knowledgeable law enforcement officers, I know that a vehicle of considerable value, such as the vehicle that is the subject of this affidavit, can be easily disposed of, or if damaged, will lose considerable value. Therefore, a restraining order under 21 U.S.C. § 853(e) may not be sufficient to assure the availability of the property for forfeiture.

43. On March 5, 2005, Detective Mary McGuire of the Delaware State Police Special Investigations Unit went into the Dragon's Lair store at 106 Midway Village, Rehoboth Beach, Delaware. Detective McGuire is an experienced narcotics officer with the Delaware State Police and has attended both state and federal training courses involving dangerous drugs. Detective McGuire entered the store and walked into a room to the left of the entrance door. In the room, Detective McGuire observed numerous articles of drug paraphernalia. Detective McGuire observes metal, wooden, plastic, and glass pipes in different shapes and sizes. There were metal bowls and water bongs. From Detective McGuire's experience the items observed are for the use of marijuana and other controlled substances. The items observed and like items are commonly seized during illegal drug investigations as a means to inhale marijuana. On March 12, 2005, Detective McGuire went into Teragwen's Leather Toys and Lace at 1044 South Dupont Highway, Dover, Delaware. Detective McGuire entered the store and walked through a clothing section in the store. Detective McGuire then went into a room to the left and observed numerous articles of drug paraphernalia. Detective McGuire observes metal, wooden, plastic, and glass pipes in different shapes and sizes. There were metal bowls and water bongs. From Detective McGuire's experience the items observed are for the use of marijuana and other controlled substances. The items observed and like items are commonly seized during illegal drug investigations as a means to inhale marijuana.

46. Federal law states that, "It is unlawful for any person . . . to sell or offer for sale drug paraphernalia." 21 U.S.C. § 863(a). That law defines "drug paraphernalia" to mean "any equipment, product, or material of any kind which is primarily intended or designed for use in manufacturing, compounding, converting, concealing, producing, processing, preparing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance. . . . It includes items primarily intended or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, hashish oil, PCP, or amphetamines into the human body, such as --
    (1) metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;
    (2) water pipes;
    (3) carburetion tubes and devices;
    (4) smoking and carburetion masks;
    (5) roach clips: meaning objects used to hold burning material, such as a marihuana cigarette, that has become too small or too short to be held in the hand;
    (6) miniature spoons with level capacities of one-tenth cubic centimeter or

less;

    (7) chamber pipes;
    (8) carburetor pipes;
    (9) electric pipes;
    (10) air-driven pipes;
    (11) chillums;
    (12) bongs;
    (13) ice pipes or chillers;
    (14) wired cigarette papers; or
    (15) cocaine freebase kits."

47. Based on my experience, as well as that of Detective McGuire, there is drug paraphernalia offered for sale at The Dragon's Lair and Terragwens Leather Toys and Lace. Further, based on my experience and training, as well as common sense, businesses such as The Dragon's Lair and Terragwens Leather Toys and Lace are likely to have at the business locations certain kinds of business records that are relevant to determining knowledge and control in relation to the drug paraphernalia offered for sale. These records would include bank account statements and checks for the year 2005, which would show who is in financial control of the business and who is profiting from the business, and invoices or purchase orders from the year 2005 relating to the obtaining of the drug paraphernalia.

48. Based upon the information contained herein, it is the belief of your affiant that probable cause does exist to believe that The Dragon's Lair and Terragwens Leather Toys and Lace sell drug paraphernalia, in violation of federal law, and that items of drug paraphernalia, as well as records that indicate the ownership of the businesses will be located at the businesses, as more fully set forth in the relevant Attachment Bs, can be found at Terragwens Leather Toys and Lace located at 1044 South DuPont Highway, Dover, Delaware, and at the Dragon's Lair, 106 Midway Village, Rehoboth Beach, Delaware.

Det. Darren Short
Del. State Police

Sworn to and subscribed before me this 15th day of March, 2005.

Honorable Mary Pat Thynge
United States Magistrate Judge
District of Delaware

*Robert Cooke residence*

Attachment B

## Property to be seized:
(2306 South State Street, Dover, Delawa__,

1. Any marijuana.

2. Any related drug paraphernalia. Drug paraphernalia shall include materials of any kind which are used, intended for use or designed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, re-packaging, storing, containing, or concealing controlled substances, and for injecting, ingesting, inhaling or otherwise introducing controlled substances into the human body.

3. Indicia of occupancy or residency of the described residence including but not limited to utility and electric bills, cancelled envelopes, and keys.

4. Books, records, receipts, notes, ledgers and other papers relating to transporting, ordering, purchasing or distributing marijuana or its by-products including addresses and telephone numbers of individuals associated in the drug trafficking operation.

5. Any documents, receipts, tickets or other papers reflecting or evidencing travel by any means in furtherance of the drug trafficking enterprise between Delaware and Pennsylvania or Connecticut.

6. Books, records, receipts, bank statements and records, money drafts, letters of credit, cashier's check receipts, passbooks, bank checks, safety deposit keys, loan documents, wire transfers and other papers or documents evidencing the obtaining, secreting, transferring, laundering and investing and/or concealing of any assets or monies obtained directly or indirectly from violations of the controlled substance laws.

7. Any United States currency in close proximity to any marijuana or paraphernalia, or any quantities of currency in excess of $500.00, or other property such as VCRS, televisions, cameras and stereos of estimated value of more than $100.00 found in quantities not normally associated with residences.

8. Any firearm or deadly weapon in close proximity to marijuana or any other controlled substance.

Gwennette residence

## Attachment B

### Property to be seized:
(3880 Paradise Alley Road, Harrington, De

1. Any marijuana.

2. Any related drug paraphernalia. Drug paraphernalia shall include materials of any kind which are used, intended for use or designed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, re-packaging, storing, containing, or concealing controlled substances, and for injecting, ingesting, inhaling or otherwise introducing controlled substances into the human body.

3. Indicia of occupancy or residency of the described residence including but not limited to utility and electric bills, cancelled envelopes, and keys.

4. Books, records, receipts, notes, ledgers and other papers relating to transporting, ordering, purchasing or distributing marijuana or its by-products including addresses and telephone numbers of individuals associated in the drug trafficking operation.

5. Books, records, receipts, bank statements and records, money drafts, letters of credit, cashier's check receipts, passbooks, bank checks, safety deposit keys, loan documents, wire transfers and other papers or documents evidencing the obtaining, secreting, transferring, laundering and investing and/or concealing of any assets or monies obtained directly or indirectly from violations of the controlled substance laws.

6. Any United States currency in close proximity to any marijuana or paraphernalia, or any quantities of currency in excess of $500.00, or other property such as VCRS, televisions, cameras and stereos of estimated value of more than $100.00 found in quantities not normally associated with residences.

7. Any firearm or deadly weapon in close proximity to marijuana or any other controlled substance.

*Jason Esham residence*

## Attachment B

### Property to be seized:
(65 Palace Road, Camelot Meadows Mobile Home Park, Rehoboth Beach, Delaware)

1. Any marijuana.

2. Any related drug paraphernalia. Drug paraphernalia shall include materials of any kind which are used, intended for use or designed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, re-packaging, storing, containing, or concealing controlled substances, and for injecting, ingesting, inhaling or otherwise introducing controlled substances into the human body.

3. Indicia of occupancy or residency of the described residence including but not limited to utility and electric bills, cancelled envelopes, and keys.

4. Books, records, receipts, notes, ledgers and other papers relating to transporting, ordering, purchasing or distributing marijuana or its by-products including addresses and telephone numbers of individuals associated in the drug trafficking operation.

5. Books, records, receipts, bank statements and records, money drafts, letters of credit, cashier's check receipts, passbooks, bank checks, safety deposit keys, loan documents, wire transfers and other papers or documents evidencing the obtaining, secreting, transferring, laundering and investing and/or concealing of any assets or monies obtained directly or indirectly from violations of the controlled substance laws.

6. Any United States currency in close proximity to any marijuana or paraphernalia, or any quantities of currency in excess of $500.00, or other property such as VCRS, televisions, cameras and stereos of estimated value of more than $100.00 found in quantities not normally associated with residences.

7. Any firearm or deadly weapon in close proximity to marijuana or any other controlled substance.

*Dragon Lair address*

Attachment B

## Property to be seized:
(The Dragon's Lair, 106 Midway Village, Rehoboth Beach, DE)

1. Indicia of occupancy or residency of the described business including but not limited to utility and electric bills, cancelled envelopes, and keys.

2. Any drug paraphernalia, specifically –

1) metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;
(2) water pipes;
(3) carburetion tubes and devices;
(4) smoking and carburetion masks;
(5) roach clips: meaning objects used to hold burning material, such as a marihuana cigarette, that has become too small or too short to be held in the hand;
(6) miniature spoons with level capacities of one-tenth cubic centimeter or less;
(7) chamber pipes;
(8) carburetor pipes;
(9) electric pipes;
(10) air-driven pipes;
(11) chillums;
(12) bongs;
(13) ice pipes or chillers;
(14) wired cigarette papers; or
(15) cocaine freebase kits.

3. Books, records, receipts, notes, ledgers and any other financial records, including bank statements and checks, relating to the year 2005, which show an ownership or operational interest in the business.

4. Any invoices or purchase orders relating to the purchase of drug paraphernalia in the year 2005.

*Teragwen's address*

## Attachment B

### Property to be seized:
(Teragwen's Leather Toys and Lace, 1044 S Highway, Dover, DE)

1. Indicia of occupancy or residency of the described business including but not limited to utility and electric bills, cancelled envelopes, and keys.

2. Any drug paraphernalia, specifically –

1) metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls;
(2) water pipes;
(3) carburetion tubes and devices;
(4) smoking and carburetion masks;
(5) roach clips: meaning objects used to hold burning material, such as a marihuana cigarette, that has become too small or too short to be held in the hand;
(6) miniature spoons with level capacities of one-tenth cubic centimeter or less;
(7) chamber pipes;
(8) carburetor pipes;
(9) electric pipes;
(10) air-driven pipes;
(11) chillums;
(12) bongs;
(13) ice pipes or chillers;
(14) wired cigarette papers; or
(15) cocaine freebase kits.

3. Books, records, receipts, notes, ledgers and any other financial records, including bank statements and checks, relating to the year 2005, which show an ownership or operational interest in the business.

4. Any invoices or purchase orders relating to the purchase of drug paraphernalia in the year 2005.