IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Criminal Action No. 05-36-1-JJF |
| | : | |
| ROBERT COOKE, | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE**

The United States of America, by and through its attorneys Colm F. Connolly, United States Attorney for the District of Delaware, and Ferris W. Wharton, Assistant United States Attorney for the District of Delaware, hereby responds to the defendant's motion to suppress evidence. For the reasons set forth below, the motion should be denied.

**A. Facts**

On March 15, 2005, the United States District Court for the District of Delaware, issued a search warrant for, *inter alia,* the defendant's residence at 2306 South State Street, Dover, Delaware. The warrant authorized law enforcement officers to search for marijuana, drug paraphernalia, and various books and records associated with drug dealing activities, among other contraband. *See* Attachment B to Application and Affidavit for Search Warrant attached to Memorandum of Law in Support of Defendant's Motion to Suppress (D.I. 40) ("Aff." or "affidavit"). The warrant was based on the affidavit of Detective Darren Short of the Delaware

State Police Special Investigations Unit, and set forth the following facts:[1]

The affidavit was intended to offer evidence to show that there was probable cause to believe that there was a long running conspiracy to distribute marijuana, involving Robert Cooke as a supplier to Gwennette Bowman and Gwennette Bowman as a supplier to Jason Esham, and that there was probable cause to search the homes of those three individuals. Aff. at ¶2. Based on information provided by a past proven reliable cooperating individual (CI1), the Delaware State Police began investigating Gwennette Bowman, her husband Kenneth Bowman, and her son Jason Esham in August 2003 for illegally distributing marijuana in the Rehoboth Beach area. Aff at ¶3.

Between the end of August 2003 and the end of March 2004, CI1 made six controlled purchases of small quantities of marijuana from Jason Esham at Esham's home in Rehoboth Beach. Aff. at ¶¶4, 7-9, 11, 12. In addition, CI1 advised investigators that Gwennette Bowman was Jason Esham's supplier, having observed her drop off large quantities of marijuana to Jason Esham at his residence in December 2003, and having been told by Esham in June 2004 and again in December 2004 that Gwennette Bowman was his source for marijuana. Aff. at ¶¶10, 13, 14. In late December 2003 and early January 2004, CI1 also observed Gwennette Bowman in possession of approximately ten pounds of marijuana and heard her talk about distributing it to others. Aff. at ¶15.

In late February 2005, a second informant (CI2) contacted Detective Short and provided him with information about purchases of marijuana that CI2 had made from Gwennette

---

[1] The parties agree that the issue raised by the defendant's motion is controlled by the four corners of the search warrant and accompanying affidavit, and that an evidentiary hearing on this issue is therefore not required.

Bowman. Aff. at ¶16. In late February 2005 CI2 made two controlled purchases of marijuana from Gwennette Bowman at her residence. Aff. at ¶17, 18. During the second controlled purchase, Gwennette Bowman told CI2 that her supplier, Robert Cooke, was looking for someone local from whom he could buy large quantities of marijuana. Aff. at ¶18. Bowman agreed to arrange for a meeting at her house so that CI2 could meet Robert Cooke. *Id.*

On February 25, 2005, a meeting took place between Gwennette Bowman, Cooke, and CI2 at Bowman's residence. Aff. at ¶19. At that meeting, Cooke stated that he sells approximately 14-30 pounds of marijuana a month and has been in the marijuana business for a long time, dealing with a "tight clientele"; that his partner was on his way to Connecticut to pick up twenty pounds of marijuana; that he was currently paying $1,800-$1,900 a pound; that he would purchase marijuana in bulk from CI2 for $2,000 a pound; and that he could purchase all 30 pounds in a 42-day growing cycle from CI2. Aff. at ¶21.

At the February 25th meeting, Cooke agreed to sell CI2 a half-pound of marijuana to hold CI2 over until CI2's crop was harvested. Aff. at ¶22. Cooke told CI2 that he would sell CI2 the marijuana in the parking lot of the BCP car dealership in Smyrna, Delaware. *Id.* On March 2, 2005, CI2 made a controlled buy of marijuana from Cooke at the Smyrna location. Aff. at ¶26. During the transaction, the two had a conversation in which Cooke told CI2 that he had a partner who mainly sold to lawyers and people in the music industry. *Id.* Cooke also said that he wanted to buy as close to ten pounds as possible on his first purchase from CI2 and that it would not be a problem for him to give CI2 $15,000-$20,000 during the exchange. *Id.* Cooke also told CI2 that a local supplier would keep his partner from showing up at his house in the middle of the night when returning from Philadelphia or Connecticut. *Id.*

Investigators confirmed that the location of Cooke's residence. Cooke listed 2306 South State Street, Dover, Delaware as his residence on his state tax returns for 2001, 2002 and 2003. Aff. at ¶29. A check of Kent County property tax information on March 1, 2005 showed that Cooke owned a residence at 2306 South State Street. Aff. at ¶25. A one-story red brick residence is located at that address. Aff. at ¶34.

Finally, based on Detective Short's training, experience, and participation in past drug investigations he knows that it is common for drug traffickers to secrete contraband, proceeds of drug sales, records of drug transactions and drugs in their residences. Aff, at ¶39.

B. <u>Argument</u>

1. **Detective Short's Affidavit Provided a Substantial Basis for Finding Probable Cause**

"A magistrate's determination of probable cause should be paid great deference by reviewing courts." *United States v. Williams*, 3 F.3d 69, 72 (3d Cir. 1993)(quoting *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)). As the Supreme Court has explained, a reviewing court's function is merely to ensure that the issuing judge had a substantial basis for finding that probable cause existed. *See, e.g., United States v. Leon*, 468 U.S. 897, 915 (1984)(citing, *inter alia*, *Gates*, 462 U.S. at 239; *Gates*, 462 U.S. at 236 ( "[A]fter the fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review.") *see also United States v. Deaner*, 1 F.3d 192, 196 (3d Cir. 1993)(citing *Gates, supra*). In making this determination, a reviewing court should avoid scrutinizing affidavits "in a hyper-technical, rather than common sense manner." *See Gates*, 462 U.S. at 236-37. A search warrant should be upheld, therefore, when the totality of facts and circumstances set forth in the accompanying affidavit could justify a reasonable belief that contraband or evidence would be found in a particular place, even if the

reviewing court disagrees with the issuing judge's conclusion. *See United States v. Zimmerman*, 277 F.3d 426, 432 (3d Cir. 2002)(citing *Gates*, 462 U.S. at 238). Moreover, "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." *United States v. Jones*, 994 F.2d 1051, 1057-58 (quoting *United States v. Ventresca*, 380 U.S. 102, 109 (1965).

In this case, Detective Short's affidavit provided the issuing magistrate judge with a substantial basis for concluding that there was probable cause to search the defendant's residence. The facts set forth in the affidavit linked the defendant to the residence; the defendant to a conspiracy to distribute marijuana which included a partner who, on February 25, 2005, was on his way to Connecticut to pick up twenty pounds of marijuana; and the partner to Cooke's residence when he would return from Connecticut.

At the February 25, 2005 meeting, Cooke told CI2 that he was interested in purchasing as much as 30 pounds of marijuana from CI2 every 42-day growing cycle. Aff. at ¶21. At the time of that meeting, Cooke's partner was en route to Connecticut to pick up twenty pounds of marijuana. *Id.* On March 2, 2005, Cooke told CI2 something very similar: that he would be interested in buying 25-30 pounds of marijuana from CI2 every 43-day cycle, because that was about his normal flow. Aff. at ¶27. Cooke told CI2 that he liked the idea of having a local supplier (CI2) so as to cut down on the risk of transporting large quantities of marijuana and that having a local supplier would also keep his partner from showing up at his house in the middle of the night when he returned from Philadelphia or Connecticut. *Id.* From that information, the magistrate judge could reasonably infer that Cooke's partner was dropping of large amounts of marijuana, or otherwise conducting the business of the drug distribution conspiracy, at Cooke's

house in the middle of the night when he returned from picking up marijuana in Connecticut. There would seem to be little reason for these visits to occur in the middle of the night other than to conduct drug related business with Cooke at his house. This inference is especially reasonable when considered in the light of Detective Short's training, experience and participation in past drug investigations, since Detective Short has learned that it is common for drug dealers to secrete contraband, proceeds of drug sales, records of drug transactions and drugs and in their residences. Aff. at ¶39.

From the totality of facts, the issuing magistrate judge reasonably could find that the defendant was involved in the marijuana distribution conspiracy. Similarly, the magistrate judge could reasonably find that drugs or other contraband would be located at the defendant's residence. Direct evidence linking the crime to the location to be searched is not required to establish probable cause for a search warrant. *See United States v. Whitner*, 219 F.3d 289, 297 (3d Cir. 2000). Instead, a court may consider the nature of the crime, the nature of the items sought, and normal inferences about where a suspect might conceal contraband. *See id.* For these reasons, the defendant's contention that there is no linkage between the defendant's residence and marijuana in the affidavit is factually incorrect and, therefore, his reliance on *United States v. McNeal*, 82 F. Supp. 945 (6th Cir. 2000), and like cases, is misplaced. Here, considering the defendant's concerns about transporting large amounts of marijuana, his partner's nocturnal visits to his residence upon returning from picking up large quantities of marijuana in Connecticut, and the usual practices of drug traffickers, it was entirely reasonable for the magistrate judge to infer that the defendant would conceal contraband in his residence. Accordingly, the defendant's motion should be denied.

### 2.    The Warrant was Obtained and Executed in Good Faith

Even if the Court determines that the judge erred in issuing the warrant, the defendant's motion should be denied because the law enforcement officers acted in good faith.  "[E]vidence found to be unsupported by probable cause is, nevertheless, admissible when obtained by officers acting in reasonable reliance on a search warrant issued by a neutral and detached magistrate judge."  *United States v. Loy*, 191 F.3d 360, 367 (3d Cir. 1999)(citing *Leon*, 468 U.S. at 897).
An officer acts in good faith reliance on a warrant if a reasonably well-trained officer in her position would not have known that the search was illegal despite the magistrate's authorization.  *See Williams*, 3 F.3d at 74.

"[O]fficers are entitled to rely on the magistrate's finding of probable cause" whenever the facts in an affidavit present a magistrate with the "judgmental task of evaluating their cumulative significance and testing it against the legal standard of probable cause."  *Id.*  Such a circumstance exists when an affidavit "present[s] a number of specific facts tending to show the presence of illegal activity" in the place to be searched.  *Id.*  Thus, "courts should not suppress probative evidence when a reasonable mistake has been made in obtaining a warrant."  *Zimmerman*, 277 F.3d at 436.  Indeed, as the Third Circuit has explained,"[t]he fact that an officer executes a search pursuant to a warrant typically 'suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception."  *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents*, 307 F.3d 137, 146 (3d Cir. 2002)(quoting *United States v. Hodge*, 246 F3d 301, 308 (3d Cir. 2001)).

An officer cannot manifest good faith reliance on a warrant "so lacking in indicia of

probable cause as to render official belief in its existence entirely unreasonable." *Ninety-Two Thousand*, 307 F.3d at 146 (citing *Williams*, 3 F.3d at 74 & n.4).[2] To fall within this exception, however, a defendant must show not only that the magistrate erred in issuing the warrant, but also that the judge's "error was so obvious that a law enforcement officer, without legal training, should have realized, upon reading the warrant, that it was invalid and should thus have declined to execute it." *See id.* at 146.

In this case, the defendant has not shown and cannot show that the affidavit was so obviously lacking in probable cause that officers should have recognized the fatal error. To the contrary, the officers acted in reasonable reliance on the validity of the search warrant. The accompanying affidavit set forth a number of specific facts, namely the circumstances of the defendant's involvement in the marijuana distribution conspiracy, the controlled delivery the defendant made to CI2, the defendant's stated desire to begin dealing locally with CI2 so as to avoid the risks associated with transporting large amounts of marijuana, the fact that the defendant's partner picked up bulk quantities of marijuana in Connecticut and stopped at the defendant's residence in the middle of the night when returning from Connecticut, and the usual practices of drug traffickers. All of these facts tended to show the linkage between the defendant's drug trafficking activity and his residence, and justified a reasonable belief that drugs or other contraband were at the defendant's residence. The defendant's motion should be

---

[2] The Third Circuit has identified three other situations where an officer may not rely on a search warrant: (i) where the magistrate issued the warrant in reliance on a deliberately or recklessly false affidavit; (ii) where the magistrate abandoned his or her judicial role and failed to perform his or her neutral and detached function; and (iii) where the warrant was so facially deficient that it failed to particularize the place to be searched or things to be seized. *See Ninety-Two Thousand*, 307 F.3d at 146. The defendant does not challenge officers' reliance on the warrant on any of these grounds.

denied for this reason as well.

                                        Respectfully submitted,

                                        COLM F. CONNOLLY
                                        United States Attorney

                             BY:   /s/
                                        Ferris W. Wharton #945
                                        Assistant United States Attorney

Dated:   September 22, 2005

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | Criminal Action No. 05-36-1-JJF |
| | : | |
| **ROBERT COOKE,** | : | |
| | : | |
| **Defendant.** | : | |

**CERTIFICATE OF SERVICE**

    I, Jennifer Brown, an employee in the Office of the United States Attorney, hereby certify under penalty of perjury that on September 22, 2005, I electronically filed:

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS EVIDENCE**

with the Clerk of Court using CM/ECF. Said document is available for viewing and downloading from CM/ECF, which will send notification of such filing(s) to the following:

| | |
|---|---|
| Edward C. Gill, Esquire | James E. Liguori, Esquire |
| Law Office of Edward C. Gill, P.A. | Liguori, Morris & Yiengst |
| 16 North Bedford Street | 46 The Green |
| Georgetown, DE 19947-0824 | Dover, DE 19901 |
| Attorney for Defendant, | Attorney for Defendant, |
| Robert Cooke | Gwennette Bowman |

Thomas A. Foley, Esquire
1326 King Street
Wilmington, DE 19801
Attorney for Defendant,
Kenneth Bowman

                                                      /s/_____
                                                         Jennifer Brown