Westlaw.

Not Reported in F.Supp.2d                                                                              Page 1
Not Reported in F.Supp.2d, 2002 WL 1268051 (D.Del.)
(Cite as: 2002 WL 1268051 (D.Del.))

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
UNITED STATES OF AMERICA, Plaintiff,
v.
Michael BELL, Defendant.
No. CRIM.A.02-02-SLR.

May 17, 2002.

MEMORANDUM ORDER

ROBINSON, J.

I. INTRODUCTION

*1 Defendant Michael Bell ("Bell") has filed a motion to suppress evidence [FN1] seized pursuant to a search warrant of his residence. (D.I.24) The United States of America ("government") has filed its opposition. (D.I.25) For the reasons that follow, the motion is denied.

   FN1. A firearm and ammunition were seized from the home.

II. BACKGROUND

The affidavit of probable cause filed in support of the search warrant of Bell's residence sets forth the following: On November 28, 2001, Detective John Ciritella ("Ciritella") [FN2] responded to the Wilmington Police Detective Division on an Assault First investigation. (D.I.18, Affidavit) The victim, Bell, was shot in the right calf, genital area and left buttocks. The victim's mother, Bonita Bell, drove him to Christiana Hospital. Another detective, Ralph Hauck ("Hauck"), also responded to Christiana Hospital to interview Bell to obtain information regarding a possible suspect and the location of the incident. Hauck learned that Bell indicated to Wilmington police officer Robert Cassidy ("Cassidy") that the incident occurred in or around 24th and Market Streets in Wilmington, Delaware. Bell [FN3] refused to tell Cassidy anything other than the location of the incident. The clothing given to Cassidy did not have any bullet holes in it, despite Bell's wounds.

   FN2. Ciritella has been a Wilmington police officer since October 6, 1986 and assigned to the Criminal Investigation Division since May 11, 1999. (D.I.18)

   FN3. According to the affidavit, Bell told the officer "I'm not going to tell you--it." (D.I.18)

Bonita Bell told Hauck that her son called her from his grandmother's house at 115 Douglas Lane, Cecilton, Maryland and explained his injuries. Bonita Bell drove and picked up her son from the Maryland home. She indicated to Hauck that her son would not tell her what had happened. Bell did tell her, according to Ciritella, that he had driven himself from 24th and Market Streets to his grandmother's house.

Ciritella believed that it was necessary to collect as evidence the clothing Bell was wearing at the time of the incident, i.e., pants, underwear and socks. Since the clothing retrieved at the Hospital did not have any bullet holes in them, Ciritella concluded that Bell had changed clothes or was lying about the facts provided. Also, it was unclear whether Bell had stopped at his home, 405 Barley Drive, Newark, Delaware to change clothing and then drove to Cecilton, Maryland. Ciritella found it "suspicious" that Bell drove past two Delaware hospitals, Wilmington Hospital and Christiana Hospital, before leaving the state.

Ciritella further included Bell's criminal history in his affidavit. Specifically, in 1991 Bell pleaded guilty to Trafficking Cocaine and as such he was

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 2
Not Reported in F.Supp.2d, 2002 WL 1268051 (D.Del.)
(Cite as: 2002 WL 1268051 (D.Del.))

prohibited from possessing a firearm. On May 18, 2001, Bell was arrested by Delaware State Police while in possession of a 9mm handgun.

Based on his training and experience, Ciritella averred that the "gunshot wounds to the genital area, are often self inflicted due to an accidental discharge while carrying the handgun in the front waistband area." (D.I. 18 ¶ 10) Based on this information, Ciritella sought a warrant to search Bell's Newark home.

III. DISCUSSION

Bell asserts there was no probable cause to support issuance of the search warrant and that the evidence seized and statements made as a result of the warrant violate his Fourth Amendment rights and must be suppressed. (D.I.24) Specifically, Bell contends the statements in the affidavit indicating that the police needed to search the residence to assist the investigation into the assault of Bell were untrue. Instead, Bell argues the police wanted to search the residence for evidence of any crimes Bell might have committed. Further, Bell argues the officers lacked any probable cause to believe that evidence related to the shooting would be found at his residence. The government asserts that under a totality of the circumstances analysis, *Illinois v. Gates,* 462 U.S. 213, 238 (1983), there was sufficient information presented to the justice of the peace to render a finding of probable cause.

*2 In *Gates,* the United States Supreme Court adopted a "totality-of-the-circumstances analysis" for probable cause determinations. According to the Court,
[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.
*Id.* at 238. The standard of review of an issuing magistrate's probable cause is not *de novo. Id.* at 236; *accord United States v. Jones,* 994 F.2d 1051, 1055 (3d Cir.1993). Instead, the Court concluded the reviewing court should afford "great deference" to the issuing officer's determination and should avoid "interpreting affidavit[s] in a hyper-technical, rather than a commonsense manner." *Id.* In so doing, the reviewing court confines itself to the facts that were before the issuing officer, " 'i.e., the affidavit, and [does] not consider information from other portions of the record." ' *United States v. Hodge,* 246 F.3d 301, 305 (3d Cir.2001), *quoting Jones,* at 1055. When resolving questionable cases, the preference accorded warrants should prevail. *Jones,* 944 F.2d at 1055.

Moreover, direct evidence linking the place to be searched with a crime is not required for a warrant to issue. *Id.* at 1056. Rather, "probable cause can be, and often is, inferred by 'considering the type of crime, the nature of the items sought, the suspect's opportunity for concealment and normal inferences about where a criminal might hide stolen property." *Id.* (citation omitted).

Applying this standard to the instant facts, the court finds that the issuing officer had a substantial basis for the probable cause determination. First, there is direct evidence that the gunshot wounds were either inflicted by another, constituting assault, or by Bell himself. With regard to the latter, as an individual with a criminal record, any possession by Bell of a firearm would be a violation of state and federal law. 11 Del. C. 1448(b), 18 U.S.C. § 922(g)(1), 924(a)(2). Moreover, the clothes worn at the time of the injuries might suggest where the bullet(s) entered and existed thereby buttressing either potential criminal offense.

Second, since Bell arrived at Christiana Hospital in clothes free of bullet holes or blood stains, a normal inference is that he changed from the clothes he had been wearing at the time of the shooting into the clothes worn at the hospital. Since the incident occurred in Wilmington and Bell then drove to his grandmother's house in Maryland, he likely passed the area or his residence in Newark, Delaware en route. (D.I.25, Exs. 1 & 2 (maps of Newark, Delaware area and Cecilton, Maryland) A normal inference is that Bell stopped by his Newark home,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                        Page 3
Not Reported in F.Supp.2d, 2002 WL 1268051 (D.Del.)
(Cite as: 2002 WL 1268051 (D.Del.))

changed into new clothes and then drove to Cecilton. Accordingly, a search of his residence was supported by probable cause.

*3 Even assuming that a substantial basis for finding probable cause was lacking, the court finds evidence obtained through the search would be admissible under the good faith exception to the exclusionary rule. *United States v. Leon*, 468 U.S. 897 (1984). According to the Court of Appeals for the Third Circuit,

> [t]he good faith exception instructs that suppression of evidence "is inappropriate when an officer executes a search in objectively reasonable reliance on a warrant's authority. The test for whether the good faith exception applies is whether a reasonably well trained officer would have known that the search was illegal despite the magistrate [judge's] authorization." The mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception.

*United States v. Hodge*, 246 F.3d at 307 [FN4] (citations omitted).

> FN4. The court identified four situations where an officer's reliance on a warrant would not be reasonable: 1) where issuing officer issued the warrant upon reliance on a deliberately or recklessly false affidavit; 2) when the issuing officer abandoned his/her judicial role and did not perform duties in a neutral and detached manner; 3) when the warrant was based on an affidavit so lacking probable cause as to make any belief in it completely unreasonable; or 4) when the warrant was facially deficient in that it did not particularize the place to be searched or things to be seized. *Id.* at 308. The court finds none of these situations present at bar.

As a final note, Bell argues *Dorsey v. State*, 761 A.2d 807 (Del.2000) is "strikingly similar" and mandates suppression of the evidence at bar. (D.I.24) In *Dorsey*, the Delaware Supreme Court found the warrant used to search the defendant's automobiles completely lacking of information from which the judicial officer could find probable cause to believe there was evidence related to the victim's death inside the vehicles. The Court concluded that exclusion of the evidence was the proper remedy under the Delaware Constitution and refused to recognize the good faith exception to the exclusionary rule announced in *Leon*, 468 U.S. 897.

The court finds *Dorsey* factually and legally inapposite. The *Dorsey* victim was found shot in the head and deceased in his room, which was in the building owned by the defendant. *Dorsey* at 808-809. The defendant gave statements to the police regarding his attempts to contact the victim and he admitted entering the victim's apartment without permission. While the police executed a warrant to search the apartment building, they applied for another warrant to search the defendant's vehicles, which were parked on the street. This second warrant was facially invalid because there was no evidence linking the vehicles to the crime.

Conversely, as already detailed, there is a nexus between the potential crimes and Bell's residence. The fact that the Delaware Supreme Court applied different legal standards, i.e., the "four-corners" test for probable cause and rejected the *Leon* good faith exception to the exclusionary rule, is not controlling in this court; instead, we are bound by *Leon* and its progeny.

IV. CONCLUSION

For the reasons stated, at Wilmington this 17th day of May, 2002;

IT IS ORDERED that defendant's motion to suppress is denied. (D.I.12)

Not Reported in F.Supp.2d, 2002 WL 1268051 (D.Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.